UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARTURO JUM-CUZ

                Petitioner,

v.

DAVID VENTURELLA, Acting Director,
U.S. Immigration and Customs Enforcement,
*et al.*,

                Respondents.

**<ins>MEMORANDUM & ORDER</ins>**
26-CV-4409 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On July 11, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested

Petitioner Arturo Jum-Cuz in the Bronx.  Petitioner was ultimately transferred to the

Metropolitan Detention Center in Brooklyn, where he remains detained.  He now seeks a writ of

habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1 ("Petition").[1]

For the reasons that follow, his Petition is DENIED to the extent it challenges the

constitutional adequacy of the initial custody determination, and DISMISSED for lack of

jurisdiction to the extent it asks the Court to review the discretionary determinations made during

Petitioner's initial custody determination.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits
all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court
refers to the pages assigned by the Electronic Case Files system ("ECF").

Petitioner is a citizen of Guatemala who initially entered the United States without inspection in or around 2011. *See* ECF No. 5 at 1, 17, 18. On July 11, 2026, while ICE officers were conducting a targeted enforcement action related to another individual in the Bronx, they encountered Petitioner, who ultimately informed ICE officers that "he was born in Guatemala, is a citizen of Guatemala," and "did not have any [immigration paperwork]." *Id.* at 18. After a records check, Officers advised Petitioner that "he [would] be taken into ICE-ERO custody pursuant to the Warrant for Arrest of Alien (Form I-200)." *Id.* On that same day, ICE served Petitioner with a Notice to Appear ("NTA") and Warrant for Arrest, and conducted an initial custody determination, *id.* at 1, which indicates that Petitioner was detained pursuant to Section 1226(a).

Approximately 10 days after his arrest, Petitioner, through counsel, initiated the instant action by filing a petition for a writ of habeas corpus. *See generally* ECF No. 1. Among other things, Petitioner states that: (1) mandatory detention "violates Due Process under the Fifth Amendment"; (2) "Petitioner is not a flight risk or danger to society"; and (3) "Petitioner's detention should not be governed by 8 U.S.C. § 1225(b)(2)(A) but rather 8 U.S.C. § 1226(a)." *Id.* at 6–7.

That same day, the Court issued an Order to Show Cause, directing the government to show cause "why the petition should not be granted, and why Respondents should not be ordered to immediately release Petitioner from detention, in light of the Second Circuit's holding in *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026), and directing the government to

---

[2]     The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

"address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226." *See* July 21, 2026, Text Order.

The government filed its response on July 24, 2026, in which it sets forth its position that: "Petitioner is properly detained pursuant to 8 U.S.C. § 1226(a)." ECF No. 5 at 2 ("Response"). The government also notes that "among the several bases for ICE's determination that Petitioner poses a flight risk is the very reasonable concern that Petitioner lacks ties to the community," but that "to the extent that the Court construes the[] facts [of this case] to be indistinguishable from those presented in *Quille* [*v. Blanche*, No. 26-cv-2818, 2026 WL 1453889 (E.D.N.Y. May 22, 2026)], that the Court would likely grant the Petition." *Id.* at 2. Petitioner did not file a reply.

### **LEGAL STANDARD**

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *Cunha*, 175 F.4th 61. There, the Circuit held that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who entered the United States without inspection and admission and were not apprehended at or near the border at the time of entry. *Cunha*, 175 F.4th at 86, 96.

3

Petitioner argues that his detention is unlawful because: (1) mandatory detention "violates Due Process under the Fifth Amendment"; (2) "Petitioner is not a flight risk or danger to society"; and (3) "Petitioner's detention should not be governed by 8 U.S.C. § 1225(b)(2)(A) but rather 8 U.S.C. § 1226(a)."[3]  ECF No. 1 at 6–7.  He requests that the Court "[o]rder Petitioner's immediate release from ICE custody, or alternatively[,] order the immigration court to conduct a bond hearing."  *Id.* at 8.

Petitioner's arguments are puzzling.  To start, although Petitioner alleges he is being detained pursuant to Section 1225, which provides for mandatory detention, *see* ECF No. 1 at 7, the government is clear that its position is that "Petitioner is properly detained pursuant to 8 U.S.C. § 1226(a)," ECF No. 5 at 2.  He also alleges that the government "provided Petitioner with no meaningful opportunity to be heard prior to arresting and detaining him and are giving him no meaningful opportunity to be heard following his arrest."  ECF No. 1 at 7.  This allegation too is directly contradicted by the government.  In its response, the government represents that, on the day Petitioner was arrested, "ICE conducted an initial custody determination, determining that Petitioner did not pose a danger to persons or property but did pose a flight risk."  ECF No. 5 at 1; *see also* Exhibit D to ECF No. 5 (a completed initial custody determination form).

Petitioner's next argument—that he "is not a flight risk or danger to society," ECF No. 1 at 7—only compounds the problem because assessment of one's flight risk or danger to the community is applicable only in instances where detention is discretionary, as is the case with

---

[3]    In light of the government's position that "Petitioner is properly detained pursuant to 8 U.S.C. § 1226(a)," ECF No. 5 at 2, Petitioner's third argument—that his detention should be governed by 8 U.S.C. § 1226(a), ECF No. 1 at 7—is moot.

Section 1226(a). *Compare* 8 U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding.") (emphasis added), *with* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States.") (emphasis added). In lieu of providing "supporting facts" for this argument, Petitioner states that he "can submit documents demonstrating his community ties and good moral character but has not been given the opportunity to do so." *See* ECF No. 1 at 7. That is incorrect. In fact, Petitioner has been given two opportunities to present evidence but failed to take advantage of either.

First, Petitioner indicates that he has not sought a bond hearing in front of an Immigration Judge, *see* ECF No. 1 at 3, despite the fact that, elsewhere in his Petition, he argues that he "is entitled to, at the very least, a fair bond hearing," *Id.* at 7; *see also Rahman v. Catletti*, No. 26-cv-3054, 2026 WL 1180138, at *2 (S.D.N.Y. Apr. 30, 2026) (Petitioner "is entitled under § 1226 to a prompt bond hearing consistent with due process."). Had Petitioner sought a bond hearing, however, he would have had an opportunity to present evidence. *See, e.g., J.R.U. v. Genalo*, No. 26-cv-4332, 2026 WL 1864975, at *10 (S.D.N.Y. June 29, 2026) (listing evidence petitioner provided at bond hearing); *Rahman*, 2026 WL 1180138, at *2 (noting that, at a bond hearing, "ICE will be at liberty to establish—and [petitioner] will be at liberty to refute—that he presents a danger to the community and/or a risk of flight").[4]

---

[4]     Indeed, the entire point of the bond hearing is for an immigration judge to determine whether Petitioner has demonstrated "by clear and convincing evidence, that release would not pose a danger to other persons or to property," and, if that burden is satisfied, whether he "further demonstrate[d], by clear and convincing evidence, that [he] is likely to appear for any scheduled proceeding or interview." *See* 8 C.F.R. § 1003.19(h)(3).

Second, Petitioner failed to take advantage of the opportunity to present evidence in connection with his Petition. Of course, Petitioner could have presented evidence in his reply to the government's Response, *see* July 21, 2026, Text Order, but he did not even file a reply.[5]

Petitioner's internal contradictions notwithstanding, he asserts that he received "no meaningful opportunity to be heard following his arrest," and that he is "not a flight risk or danger to [the community]." ECF No. 1 at 7. When taken together, Petitioner's arguments are, in effect, a challenge to the *result* of his initial custody determination dressed up as a constitutional challenge to the statutory basis for detention that Petitioner believes applied. That challenge is precisely of the sort over which this Court lacks jurisdiction.

Indeed, Section 1226(e) provides that "discretionary judgment regarding the application of [Section 1226] shall not be subject to review," and that "[n]o court may set aside any action or decision . . . regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e); *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003) *accord Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("§ 1226(e) precludes an alien from 'challeng[ing] a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.'").

Of course, Section 1226(e) does not bar the Court from "assess[ing] whether and how correct procedures were applied at all . . . and ultimately, whether [Petitioner]'s detention comports with due process." *See Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)).

---

[5]     Petitioner's failure to submit any evidence in support of his Petition ignores the fact that "it is the petitioner who bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

But, the Court has assessed the relevant procedures applied here and, based on the available record, concludes that Petitioner's detention pursuant to Section 1226, the initial custody determination, and other procedural aspects comport with due process.

Petitioner takes particular issue with the fact that ICE determined he poses a flight risk, and although he claims he did not receive any sort of hearing, the record reflects that ICE officers conducted an initial custody determination, pursuant to Section 1226, on the day of his arrest. See ECF No. 5 at 1, 9, 14–15. Here, in the section of the custody form titled "Flight Risk," the officer determined that Petitioner did not establish that he was not a flight risk. *See* ECF No. 5 at 15. The officer provided three reasons: (1) "Subject has no pending applications for relief or status with USCIS"; (2) "Subject has no children and [is] currently not married"; (3) "Subject has no ties to local community." *Id.* The government argues that, in light of these reasons, "[i]t is reasonable for the service to believe that the subject would not attend his immigration proceeding." *Id.*

As a preliminary matter, the ICE officer's first reason for determining Petitioner posed a flight risk, *i.e.*, that "he ha[d] no pending applications for relief or status with USCIS," is invalid for the reasons the Court has previously stated in its Orders in two analogous cases. There, the Court found that:

> The problem is that a per se determination of this sort—on his status alone, rather than any assessment of the factors listed on the form—comports not with 1226(a), but with Respondents' desired policy of mandatory detention under 1225(b)(2)(A) for any noncitizens who entered the U.S. without inspection however long ago . . . . [This] threatens a ping pong approach to Petitioner's liberty that is constitutionally untenable.

*Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026) (quoting *Pastrana-Beltran*, 2026 WL 1398609, at *2); *Cajamarca v. Soto*, No. 26-cv-3066 (HG), 2026 WL 1506777, at *5 (E.D.N.Y. May 29, 2026) (same). The result is the same here. "Whether

Petitioner had a pending application or not, using his status in this way is an improper application of Section 1226(a)'s requirements." *Quille*, 2026 WL 1453889, at *4.

Practically, this makes little difference for Petitioner because, although one reason is procedurally improper, the other two reasons provided in the initial custody determination form are constitutionally adequate. Those reasons—regarding Petitioner's lack of children, a spouse, and ties to the local community—are not per se determinations, are sufficiently individualized, and are supported by the available record. Moreover, the reasons are not objectionable with respect to their constitutionality, and Petitioner does not present "questions of law or constitutional challenges to the application of § 1226." *See Fontanelli as Next Friend of Bernal Garcia v. Francis*, No. 25-cv-7715, 2025 WL 2773234, at *4 (S.D.N.Y. Sept. 29, 2025).

As the Court previously noted, at bottom, Petitioner is challenging the *result* of his initial custody determination, not its constitutionality. And, because "[a] district court has no authority to review ICE's discretionary determinations or otherwise question their propriety," *Fontanelli*, 2025 WL 2773234, at *4, ICE's determination that Petitioner is a flight risk is not subject to review, *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) (expressly not reaching whether government's "proffered basis in its decision to detain [petitioner] is substantively inadequate in some respect," and noting the government "has wide latitude with respect to its discretion in this regard that is not subject to second-guessing by this Court.").

**CONCLUSION**

For these reasons, the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED to the extent it challenges the constitutional adequacy of the initial custody determination, and DISMISSED for lack of jurisdiction to the extent it asks the Court to review ICE's discretionary determinations made during Petitioner's initial custody determination.

For the avoidance of doubt, nothing in this Order shall be construed as a determination of Petitioner's right to seek custodial redetermination before an Immigration Judge ("IJ") or an individualized bond hearing before an IJ.  At any such hearing, the IJ shall meaningfully consider alternatives to detention and Petitioner's ability to pay if a monetary bond is set, and the government will have the burden of showing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk.  *See J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts ordered that the government bear the burden of demonstrating by clear and convincing evidence that discretionary detention was justified); *see also Mendoza Raymundo v. Almodovar*, No. 26-cv-02304, 2026 WL 1480372, at *5 (E.D.N.Y. May 27, 2026) (same).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.


SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
August 5, 2026